[L. A. No. 29671. In Bank. Oct. 30, 1969.]

GERALD RUBIN, Plaintiff and Appellant, v. MELLVINE FUCHS et al., Defendants and Respondents.

**COUNSEL**

Les J. Hartley for Plaintiff and Appellant.

Coombs & Friel and Hugh D. Friel for Defendants and Respondents.

**OPINION**

**BURKE, J.**—Plaintiff appeals from an adverse judgment in this action to recover damages for an alleged breach by defendants of a contract to sell certain real property to plaintiff. As will appear, we have concluded that defendants were not entitled to rescind the contract, as they undertook to do, and that the judgment in their favor should be reversed.

On July 26, 1963, plaintiff and defendants entered into a written

agreement wherein plaintiff agreed to buy and defendants agreed to sell real property in San Bernardino County for a total consideration of $50,000. The agreement, which was in the form of escrow instructions and designated a title company as the escrow holder, is set out in pertinent part in the margin.[1]

Commencing before July 31, 1963, defendants undertook the subdivision of the property pursuant to the Subdivision Map Act (Bus. & Prof. Code, § 11500 et seq.) and the local subdivision ordinance, and under the supervision of the engineer's office, City of San Bernardino. By October 28, 1963 (the date by which the agreement recites that plaintiff was to deposit the considration in escrow, see fn. 1, *ante*), defendants had substantially performed the requirements imposed by the city as a prerequisite for the final subdivision map to be submitted to the city council and, if approved, be recorded. However, defendants were first required to make payments totaling some $875 to cover certain uncompleted work, and to either install the remainder of the offsite improvements required by the city or else post a bond to guarantee that they would be installed. Mr. Williams, of the city engineer's office, testified that any time after October 28, 1963, defendants could have posted the required bond and had they done so, the map could go of record as far as the city was concerned. Defendant Mr. Fuchs testified that by the end of October 1963 the map could have been recorded by the posting of a security bond in the face amount of some $1,500, for a premium of approximately $50; that "There was never any problem, recording the map."

After October 28, 1963, and on or about November 1, 1963, at the

---

[1]Plaintiff agreed that he would "*on or before October 28, 1963* hand you said [$50,000] consideration which is payable as follows: $30,000 to be deposited by buyer *before the close of escrow,* and buyer to execute a purchase money deed of trust in the sum of $20,000 . . . .

"I will deliver to you any additional funds and execute any instruments which are necessary to comply with the terms hereof, all of which you may use when you hold for me a deed executed by Seller [defendants] and when you can issue your . . . policy of title insurance . . . on the following described property situated in the County of San Bernardino, State of California,

"Property known as Tentative Tract 7050.

"Said *Tract to be of record before the close of escrow.* . . . .

"This *escrow is subject to* the *property being subdivided into ten* R-3 zoned *lots* at the expense of the Seller. Buyer to give written approval of Tract Map . . . ." (Italics added.)

The agreement also specified the terms of the purchase money deed of trust to be given by plaintiff, including the following: "Beneficiary will cause any lot or lots to be released from this lien upon payment of the sum of $2,000.00 for each lot so released."

The expression "close of escrow" was defined as "the date on which instruments referred to herein are filed for record," and time was declared to be of the essence. Defendants, as seller, agreed to sell upon the described terms, and to "deliver to you papers, instruments and/or funds required from me within the time limit specified herein . . . ."

request of sellers the sum of $2,000 was deposited in the escrow by plaintiff. Defendants testified that from about October 24 onward they repeatedly informed plaintiff they were ready to post the bond in order to record the tract map, and were anxious to get the matter closed, to which plaintiff responded ."There's no hurry. You're not through with your improvements." Plaintiff testified to the contrary that on about October 28 he had inquired of defendant Fuchs (who was acting for sellers) about closing the escrow, to which Fuchs replied that he was not ready to close and suggested "Why don't we keep it open until the improvements are in and we can close the escrow." Defendant Coleman testified that on behalf of sellers he made a final demand of plaintiff early in February 1964 that the balance of the down payment be deposited into escrow by February 18. The deposit was not made.

On February 19, 1964, without plaintiff's consent defendants canceled the escrow for the stated reason that ". . . because the Buyer failed to deposit additional sums of money into escrow by Tuesday, February 18, 1964 . . . ."

On February 24, 1964, plaintiff's attorney sent a letter to the escrow officer offering performance by plaintiff and demanding performance by defendants. The letter was transmitted to defendants who did not respond thereto.

On February 27, 1964, the tract map received final official approval and was recorded in the office of the recorder of San Bernardino County.

Also, on February 27 or 28, 1964, defendants sold the property to other purchasers for a total price of $65,000. This action by plaintiff followed.

The trial court found and concluded that pursuant to the agreement betweeen the parties plaintiff was required to deposit $30,000 by October 28, 1963; that he had failed to do so despite several demands by defendants, the last of which was on February 10, 1964; that plaintiff's performance was not excused, and constituted a failure of consideration on his part; that defendants did not breach the contract; that defendants were entitled to, and did, rescind the contract about February 19, 1964; that the new buyers to whom the property was sold on February 27, 1964, did not wrongfully induce a breach by defendants of their contract with plaintiff. Judgment was entered accordingly, in favor of defendants.

■ The rule is that provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. (*San Diego Constr. Co.* v. *Mannix* (1917) 175 Cal. 548, 556 [166 P. 325]; *Berry* v. *Kettle* (1967) 256 Cal.App.2d 252, 254 [63 Cal.Rptr. 804]; *Sosin* v. *Richardson* (1962) 210 Cal.App.2d 258, 264 [3] [26 Cal.Rptr. 610]; *Larson* v. *Thoresen* (1953) 116 Cal.App.2d 790, 794

[254 P.2d 656].) Instead, whenever possible the courts will construe promises in a bilateral contract as mutually dependent and concurrent. (*Katemis* v. *Westerlind* (1953) 120 Cal.App.2d 537, 545-546 [261 P.2d 553]; *Brennan* v. *Ford* (1873) 46 Cal. 7, 16; see also *King* v. *Stanley* (1948) 32 Cal.2d 584, 590 [197 P.2d 321].) ■ As applied to a contract for the sale of real estate calling for concurrent performance, neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance. (*Katemis* v. *Westerlind, supra.*) The record does not disclose whether the trial court viewed plaintiff's promise to deposit $30,000 into escrow as a condition precedent to performance by defendants, or whether the court was of the view that all promises in the instant contract were mutually dependent and that defendant sellers were fully able to perform and had tendered timely performance thereby placing plaintiff buyer in default when he delayed depositing the down payment.

■ However, plaintiff's promise was to deposit the *full* $50,000 consideration by October 28, 1963, including a purchase money deed of trust which was to contain a clause providing for release of each subdivided lot upon a lump sum payment therefor. Defendants have not suggested in what manner such a deed of trust could be prepared or executed by plaintiff unless and until the tract map of the subdivision was first recorded. The contract provision for deposit of the $50,000 full consideration by October 28, when combined with the further specifications that the consideration was to consist of $30,000 cash and the $20,000 deed of trust to be deposited *before the close of escrow* and that the tract was to be of record *before the close of escrow,* plainly demonstrate that the parties contemplated that the escrow would be ready to close by October 28, 1963. However, it is equally plain that plaintiff's ability to execute the deed of trust as promised was necessarily dependent upon the prior recordation of the tract map. Indeed, as pointed out in the testimony of the escrow officer handling the matter on behalf of the escrow company, no adequate description of the property was available for preparation of either the deed from defendants, or the trust deed from plaintiff, until the tract map was first recorded thereby providing official recording data by reference to which the property could be described in those instruments. The conclusion is thus compelled that recordation of the tract map was a condition precedent to performance by plaintiff buyer.

This conclusion finds further support in the contract provision that the escrow "is subject to the property being subdivided into ten . . . lots at the expense of the Seller." "Subject to" is generally construed to impose a condition precedent. (*Matthews* v. *Starritt* (1967) 252 Cal.App.2d 884, 887 [60 Cal.Rptr. 857]; *Lawrence Block Co.* v. *Palston* (1954) 123 Cal.App.2d 300, 310 [266 P.2d 856]; *Riess* v. *Murchison* (9th Cir. 1964) 329 F.2d 635, 643.) Accordingly, until subdivision was completed by recordation of

the tract map plaintiff was not obliged to perform his part of the contract and could not be placed in default by defendants' demands that he do so.

However, even if the promises of the parties be deemed concurrent, it would appear unreasonable to require plaintiff to accept the assurances of defendants that they were ready to post a bond and would then be able to record the map. (See *Sheehy* v. *Miles* (1892) 93 Cal. 288, 295-296 [28 P. 1046].) Defendants' mere assertions of ability to perform did not constitute the official approvals or provide the official certificates required by the Subdivision Map Act before recordation of the map could be accomplished. (See Bus. & Prof. Code, §§ 11591, 11593, 11610, 11611, 11614, 11625.) It was not until February 27, 1964, that the map received the final official approval which enabled its recordation on that date. Until then neither party to the contract of purchase and sale of the property was in a position to execute or deposit into the escrow the instruments required before the escrow could close. It follows that defendants were not entitled to unilaterally rescind the contract because of plaintiff's alleged breach in failing to deposit the full down payment into the escrow. (*Integrated, Inc.* v. *Alec Fergusson Electrical Contractor* (1967) 250 Cal.App.2d 287, 298 [58 Cal.Rptr. 503].)

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.