The SOUTHLAND CORPORATION, a Texas corporation, Plaintiff-Appellant,

v.

EMERALD OIL COMPANY, etc., et al., Defendants,

and

Charles E. Thomas Company, et al., Defendants-Appellees.

No. 85–5657.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 5, 1986.

Submitted March 31, 1986.

Decided May 21, 1986.

James V. Jordan, Thomas Arafe, Solish, Jordan, & Wiener, Los Angeles, Cal., for plaintiff-appellant.

Phillip Kelly, Tony L. Cogliandro, Kelly & Graham, Torrance, Cal., for defendants-appellees.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Plaintiff/appellant The Southland Corporation (hereinafter Southland) appeals in part from a judgment that defendants/appellees Jack Smith, Emerald Oil, Inc. (hereinafter Emerald), Jerry Thomas, and Charles E. Thomas Company (hereinafter CTC) are not liable for fraud and conversion and Thomas and CTC are liable only for nominal damages for trespass. Southland contends on appeal on that the district court erred in concluding that: (1) a lease agreement between Southland and Emerald did not provide for transfer of ownership of gasoline dispensing equipment installed on the leasehold; and (2) even if the lease did provide for transfer of ownership, there was no transfer of title in fact under the California Commercial Code. We reverse the district court's interpretation of the lease agreement because it is our view that the lease did provide for transfer of ownership and there was a transfer of title in fact.

## FACTS

On September 23, 1982, Southland leased a gasoline station in Torrance, California to Emerald. A month later Emerald entered into a contract of sale with CTC for gasoline dispensing equipment which was to be installed at the Torrance station. CTC installed the replacement equipment on October 21, 1982, and billed Emerald for $55,000 on 30 days credit for the equipment.

On November 10, 1982, Southland and Emerald executed an amendment to the Torrance lease. The amendment permitted Emerald to install the gasoline dispensing equipment purchased from CTC, and reduced Emerald's rent for the Torrance station by $500 per month effective upon installation.

During January and February of 1983, Emerald paid CTC approximately $27,500 for the replacement equipment. In May, 1983, Emerald abandoned the Torrance premises.

In June, 1983, employees of CTC entered the Torrance station and removed some parts of the replacement equipment. After

being ordered off the premises by a Southland employee, the CTC employees left with the equipment they had removed.

Soon thereafter Southland notified CTC that it was claiming ownership of the equipment. Nonetheless, on July 18, 1983, Smith and Emerald employees entered the Torrance station and removed almost all of the equipment. Later that evening, Thomas and a CTC employee removed the remaining above-ground equipment. On July 19, 1982, Emerald delivered to CTC the equipment it had removed the previous evening. CTC has refused to comply with Southland's requests that the equipment be returned. On August 5, 1983, Southland filed this diversity action against Emerald, CTC, Smith, and Thomas alleging among other things trespass and conversion.

## INTERPRETATION OF PARAGRAPH 28

Paragraph 28 of the lease amendment provides in pertinent part: "[T]itle to all replacement equipment shall pass to LESSOR upon installation thereof free from all liens and encumbrances ...." The district court interpreted this language as creating a condition precedent to the passing of title to the equipment. As construed by the trial judge, title was not to pass to Southland until the equipment was free of all liens and encumbrances. The district court found the condition was not met and title never passed to Southland.

Southland contends Paragraph 28 does not create a condition precedent. Instead, Southland argues that the clause constitutes a promise by Emerald that title to the equipment was to pass to Southland free of all liens and encumbrances upon installation of the equipment.

The lease agreement provides the contract shall be construed and interpreted in accordance with the laws of the state of California. Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved. *See Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 866, 44 Cal.Rptr. 767, 402 P.2d 839 (1965); *Sarchett v. Blue Shield of California*, 158 Cal.App.3d 218, 223, 204 Cal.Rptr. 534 (1984); *compare Miller v. Safeco Title Insurance Co.*, 758 F.2d 364, 367 (9th Cir. 1985) (contract interpretation is a mixed question of law and fact; a trial court's decision that is based on analysis of contractual language and application of principles of contract interpretation is a matter of law reviewable *de novo*). We are here concerned with the principles of contract interpretation and will review Paragraph 28 *de novo*.[1]

The standard for our independent interpretation of the clause is reasonableness. California Civil Code § 3542 (West 1964) provides: "Interpretation must be reasonable." "Courts should avoid an interpretation which will make a contract 'unusual, extraordinary, harsh, unjust or inequitable ....'" *Yamanishi v. Bleily & Collishaw, Inc.*, 29 Cal.App.3d 457, 462, 105 Cal.Rptr. 580 (1972) (quoting *Hertzka & Knowles v. Salter*, 6 Cal.App.3d 325, 335, 86 Cal.Rptr. 23 (1970)). A contract will not be construed so as to place one party at the mercy of another. *Yamanishi*, 29 Cal. App.3d at 462, 105 Cal.Rptr. 580. We have stated that "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Shakey's, Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir.1983); *see also Elte, Inc. v. S.S. Mullen, Inc.*, 469 F.2d 1127, 1131 (9th Cir.1972).

The terms of the lease amendment as a whole belie the interpretation of the district court. The only reasonable interpretation of the clause is that it creates a promise, not a condition precedent. Southland and Emerald contemplated a mutual exchange of obligations: a reduction in rent and per-

---

1. CTC argues that review of the district court's finding should be clearly erroneous because the trial court based its interpretation on facts that establish the contract's ambiguity and therefore the interpretation was a finding of fact. This contention is without merit. The district court did not find any ambiguity. Instead, the court based its interpretation of the contract solely on the language of the contract itself. In fact, the trial court introduced its conclusion of law on this issue with the words "By the contract's own terms ...."

mission to alter Southland's existing gasoline station in exchange for title to the replacement equipment.

If Paragraph 28 is interpreted as providing that title to the equipment would not pass to Southland until the equipment was free of all liens and encumbrances, then Emerald's obligation to tender its consideration under the lease, title to the equipment, would depend entirely on whether Emerald cleared the title to the equipment of all liens and encumbrances. This interpretation places performance of the purported condition within the exclusive control of one of the contracting parties and makes the lease illusory. Such an interpretation violates the established principle of contract interpretation that "where one interpretation makes a contract unreasonable or such that a prudent person would not normally contract under such circumstances, but another interpretation equally consistent with the language would make it reasonable, fair, and just, the latter interpretation would apply." *Elte, Inc. v. S.S. Mullen, Inc.*, 469 F.2d 1127, 1131 (9th Cir. 1972).

■ Furthermore, it is the law of this circuit and the state of California that "[c]onditions precedent are not favored and the courts will not construe stipulations as conditions unless required to do so by plain, unambiguous language." *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1264 (9th Cir.1982); *see also Rubin v. Fuchs*, 1 Cal.3d 50, 53–54, 81 Cal.Rptr. 373, 459 P.2d 925 (1969) (whenever possible courts will construe promises in a bilateral contract as mutually dependent and concurrent). "Courts are especially loath to find a condition precedent when the alleged condition is peculiarly within the control of one of the contracting parties." *Lockwood v. Wolf Corp.*, 629 F.2d 603, 610 (9th Cir.1980). Although Paragraph 28 could have been drafted more clearly, there is no plain, unambiguous language creating a condition precedent to title passing to Southland. Accordingly, we conclude that pursuant to Paragraph 28, title to the replacement equipment passed to Southland free of all liens and encumbrances upon its installation.[2]

## APPLICATION OF CALIFORNIA COMMERCIAL CODE

The district court also concluded that even if Paragraph 28 can be read to provide that title would pass upon installation, making Southland a purchaser of the equipment under California Commercial Code sections 1201(32), (33), Southland's title was not superior to CTC's security interest in the equipment under California Commercial Code section 9301. Southland contends that under section 9301 Southland's ownership rights are superior to any interest claimed by CTC.

Section 9301 of the California Commercial Code provides in pertinent part:

[A]n unperfected security interest is subordinate to the rights of ... (c) ... a person who is a ... buyer not in the ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.

■ There is no question that CTC's interest in the equipment after delivering it to Emerald is an unperfected security inter-

**2.** CTC also contends that the clause is ambiguous and should be interpreted against the writer, Southland. *See Interpetrol Bermuda, Ltd. v. Kaiser Aluminum International Corp.*, 719 F.2d 992, 998 (9th Cir.1983); Cal.Civ.Code § 1654 (West 1964). The district court made no finding that the clause was ambiguous and there is no evidence that clearly establishes that Southland wrote paragraph 28.

Nevertheless, we independently could find that the clause is ambiguous as the question of ambiguity is a matter of law and is reviewed *de novo*. *Saavedra v. Donovan*, 700 F.2d 496, 500 (9th Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983). "A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *United Teachers of Oakland, Local 771 v. Oakland Unified School District*, 75 Cal.App.3d 322, 324, 142 Cal.Rptr. 105, (1977); *see also Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981). As discussed earlier, the only reasonable interpretation of the clause is that it operates as a promise, not a condition precedent. Because Paragraph 28 is not susceptible of two different reasonable interpretations, it is not ambiguous.

est. Section 9107(a) defines a purchase money security interest as a security interest "[t]aken or retained by the seller of the collateral to secure all or part of its price ...." CTC delivered the collateral, the gasoline dispensing equipment, to Emerald on credit pursuant to Invoice 16909, and purported to retain "title" to the equipment until full payment. This transaction provided CTC with a purchase money security interest under section 9107(a). *See* White and Summers, *Uniform Commercial Code*, §§ 22–2, 25–5 (2d ed. 1980) (a section 9107(a) secured party is a seller who extends credit and reserves a security interest). Section 9302 of the Code provides that CTC was required to file a financing statement with the appropriate state office in order to perfect its security interest. The parties stipulated in the pretrial conference order that CTC "never recorded or otherwise perfected a security interest in the equipment."

The parties also do not dispute that Southland is a buyer not in the ordinary course of business within the meaning of section 1201(9) or that Southland gave value for the equipment under section 1201(44) in the form of the rent reduction.

The question then is whether Southland took delivery of the replacement equipment without knowledge of CTC's security interest, as required by section 9301. The district court concluded that Southland had "reason to know" a security interest existed and acted in bad faith in failing to inquire about CTC's interest in the equipment. We review *de novo* the district court's conclusion that Southland's interest in the equipment was subordinate to CTC's interest as it involves an application of law to facts. *United States v. McConney*, 728 F.2d 1195, 1200–04 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Section 9301 requires only that Southland have taken delivery "without knowledge" of CTC's security interest. The Code defines knowledge as "actual knowledge": "A person 'knows' or has 'knowledge' of a fact when he or she has actual knowledge of it." Cal.Com.Code § 1201(25)(c) (West 1964). The district

court made explicit findings and conclusions that Southland did not have actual knowledge of CTC's security interest and there is no evidence in the record which would lead us to conclude otherwise.

Notwithstanding the express language of sections 9301 and 1201(25)(c) requiring actual knowledge, and the district court's finding that Southland had no actual knowledge of CTC's interest, the trial judge subordinated Southland's interest in the equipment to that of CTC. To reach this result, the district court applied the good faith standard enunciated in *Hollywood National Bank v. IBM*, 38 Cal.App.3d 607, 113 Cal.Rptr. 494 (1974). In *Hollywood*, a bank made a loan to an individual it knew to be a poor credit risk. The bank unknowingly accepted stolen stock certificates as security for the loan and later claimed bona fide purchaser status under Division 8 of the California Commercial Code as pledgee of stolen stock certificates. The evidence showed there was calculated ignorance on the bank's part in making the loan and accepting the stolen certificates as security. The California Court of Appeal stated:

> Mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or a mere suspicion of an infirmity or defect in title, does not preclude the transferee from occupying the position of a [good faith purchaser], unless the circumstances are so cogent and obvious that to remain passive would amount to bad faith.

*Id.* at 614, 113 Cal.Rptr. 494. The *Hollywood* court concluded the bank had not acted in good faith and was not a bona fide purchaser under Division 8 of the Code. *Id.* at 615, 113 Cal.Rptr. 494.

The good faith *Hollywood* standard is not applicable to this case. The issues in *Hollywood* arose under Division 8 of the Code, which governs investment securities, and specifically concerned section 8405, which required the bank to be a bona fide purchaser in order to pursue its claim. Section 8302 defines bona fide purchaser as "a purchaser for value in good faith and without notice of any adverse claim who

takes delivery of a security ...." This case involves secured transactions covered by Division 9 of the Code. Section 9301 which governs this action does not mandate good faith; it requires only that Southland have taken delivery without actual knowledge of CTC's security interest. *Compare* Cal.Com.Code § 2403 (West 1964) (requires "good faith"); Cal.Com.Code § 2311 (warranty of title will be excluded or modified if buyer has "reason to know" of other security interests).[3]

The record clearly demonstrates that Southland's ownership rights to the replacement equipment are superior to CTC's unperfected security interest under section 9301: Southland was a buyer not in the ordinary course of business that gave value and took delivery of the equipment without actual knowledge of CTC's security interest and before that interest was perfected.

## FRAUD

Southland also contends the district court erred in stating "[b]ecause no evidence was proffered as to what Emerald or Smith informed Southland concerning the installation of the equipment and the reduction in the rent, these defendants are not guilty of fraud." We agree that the district court's finding that no evidence on this issue was proffered is clearly erroneous. The lease for the Torrance station and its amendment were admitted into evidence. These documents set forth Smith's and Emerald's representations to Southland: that Southland would receive title to the equipment upon installation and in return Southland would be obligated to lower Emerald's rent. Under California law, a written instrument is presumed to express the true intent of the parties. *Matter of Beverly Hills Bancorp.*, 649 F.2d 1329, 1333 (9th Cir.1981). Thus, there is evidence in the record concerning "what Emerald or Smith informed Southland."

Southland contends that because the district court's conclusion on the fraud counts is based on a clearly erroneous finding of fact, we should direct a judgment for Southland and against Emerald Oil and Smith on the fraud counts. Southland argues that the district court determined that Emerald Oil and Smith had actual knowledge that the gasoline dispensers were not paid for when they transferred title to them to Southland; therefore, Emerald Oil and Smith are guilty of fraud.

3. The parties raised a third issue below and again on appeal: whether Southland acquired title to the equipment pursuant to Division 2 of the California Commercial Code, § 2403. Section 2403 allows a person who has voidable title to pass good title to a good faith purchaser for value. *See In re Coast Trading Co.*, 744 F.2d 686, 690 (9th Cir.1984). The district court concluded that section 2403 was not applicable in this case because Emerald did not have voidable title. It is not necessary for us to address this issue because the transactions at issue are governed by Division 9 of the California Commercial Code, not Division 2.

Section 2102 sets forth the scope of Division 2 and provides in pertinent part: "[T]his division ... does not apply to any transaction which ... is intended to operate only as a security transaction ...." The California Code Comment following section 2102 explains that "[t]his section excludes from the operation of Division 2 transactions which, although in the form of a sale or contract to sell, are really only security devices." Section 9102 of the Code establishes the scope of Division 9: "[T]his division applies (a) To any transaction (regardless of its form) which is intended to create a security interest ...."

As discussed earlier, CTC's transaction with Emerald involved only a security device, embodied in Invoice 16909, by which CTC delivered the collateral, the gasoline dispensing equipment, to Emerald on credit while purporting to retain "title" until full payment. Section 9107(a) provides that this security device is a purchase money security interest because it is a security interest "[t]aken or retained by the seller of the collateral to secure all or part of its price ...." White and Summers describe a section 9107(a) secured party, such as CTC, as "the old conditional vendor, a seller who has, in effect, made a loan by selling goods on credit." White and Summers, *Uniform Commercial Code* § 25–5, p. 1043 (2d ed. 1980) (footnote omitted); *see also id.* at § 22–2, p. 875 (a clear case of a consensual security interest to which Article Nine applies is the "conditional" sale in which the seller extends credit and reserves a security interest). Because the provisions of Division 9 concerning priorities of secured parties and third-party purchasers govern this action, it is not necessary to reach any issues which may arise under Division 2 of the Code. *See id.* at § 25–15.

The elements of fraud consist of: (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation. *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984). Southland has not established all of the elements of fraud. Knowledge that a statement is false, without more, does not constitute fraud. Intent to deceive is an element of fraud and is a factual issue to be determined by the trier of fact. *See Hart v. McLucas*, 535 F.2d 516, 520–21 (9th Cir. 1976) (case remanded to the NTSB to rule on the factual issue of petitioner's intent to deceive); *see also Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707, 713 (9th Cir. 1984) (disputed fact issues are within the province of the trier of fact). We decline to direct a judgment on the fraud counts and determine only that the district court's finding that no evidence on this issue was proffered is clearly erroneous.

## CONCLUSION

Paragraph 28 of the lease amendment transferred title to the gasoline dispensing equipment to Southland free of all liens and encumbrances. Furthermore, pursuant to section 9301, Southland's ownership rights to the equipment are superior to CTC's unperfected security interest. Thus, the district court erred in concluding that "Southland did not own the equipment and therefore the defendants did not convert it when they took it from the Torrance premises." The district court also erred in basing its conclusion that Smith and Emerald were not guilty of fraud on a clearly erroneous finding of fact. The district court's judgment is REVERSED. The case is REMANDED to the district court for a determination of: (1) damages on the conversion counts; and (2) liability on the fraud counts.