[No. B201536. Second Dist., Div. Eight. Dec. 18, 2008.]

FIREMAN'S FUND INSURANCE COMPANY, Plaintiff and Appellant, v. SIZZLER USA REAL PROPERTY, INC., Defendant and Respondent.

HEROICO ANGELO AGUILUZ, Plaintiff, v. SKY SUSHI et al., Defendants.

416

**Counsel**

Jerome M. Jackson for Plaintiff and Appellant.

Anderson, McPharlin & Connor and D. Damon Willens for Defendant and Respondent.

## Opinion

**COOPER, P. J.**—Plaintiff, Fireman's Fund Insurance Company, appeals from a judgment in favor of defendant, Sizzler USA Real Property, Inc., following a court trial of plaintiff's complaint for subrogation, by which plaintiff sought to recover amounts it paid to indemnify its insured, Santa Monica Collection LLP (SMC), in a premises liability case. The ultimate question presented is whether a subrogation waiver in the leases between SMC and defendant barred plaintiff's claim. The trial court held that it did. We agree, and affirm the judgment.

### FACTS

SMC owns a shopping center located at Fairfax Avenue and Santa Monica Boulevard in West Hollywood. Defendant is a tenant of space in the center, entitled also to nonexclusive use of its parking area. Defendant and SMC are successor parties to two effectively identical leases (covering adjacent units), originally entered into between the organizers of SMC and a related Sizzler corporation, which prepared the leases.

The leases each contain the following provisions regarding liability. Under paragraph 17, "LIABILITY INSURANCE," defendant as tenant is obligated to maintain liability insurance, for claims against it for bodily injury and property damage occurring about the leased premises, "with a minimum combined single limit of" $1 million. "Tenant shall have Landlord named as an additional insured on each policy." Paragraph 19, "INDEMNITY," provides that "Tenant will indemnify and save Landlord harmless from any loss, cost or expense . . . and from any liability . . . on account of any damage to person or property occurring upon or about the Premises . . . arising out of any failure of Tenant to perform and comply in any respect with any of the requirements and provisions of this Lease." Finally, paragraph 20, "RELEASE AND WAIVER OF SUBROGATION," provides: "The parties release each other and their respective authorized representatives from any claims for damage to any person or property of either Landlord or Tenant . . . about the Premises that are caused by or result from risks insured against under any insurance policies carried by the parties . . . ." Second, "The parties further agree that neither party shall be liable to the other for any damage caused by fire or any of the risks insured against under any insurance policy and each party shall cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against either party in connection with any covered damage."

In addition, paragraph 13 gave defendant tenant the right to assign or sublet, "provided, however, that Tenant shall remain liable for . . . the performance of all the obligations of Tenant" under the leases. In August 1993, defendant did sublease the premises to a nightclub known as Sky Sushi.

On September 13, 2002, Heroico Angelo Aguiluz, a patron at Sky Sushi, was attacked and stabbed, in the premises parking area, by several men who had first accosted and threatened him inside the club. Sky Sushi security guards had escorted the assailants out, at which point they told Aguiluz they would "shank" him. The guards later escorted Aguiluz and his girlfriend downstairs to the valet parking stand in the parking area, but they did nothing to protect Aguiluz, although they had given him the impression they would.

Aguiluz commenced suit on account of his injuries. His first amended complaint named SMC, among others, as a defendant. SMC sought indemnification (and defense) from defendant. Defendant directed SMC to defendant's insurance, with Federal Insurance Company (Federal). The applicable policy, however, provided only $750,000 coverage, after a self-insured retention of $250,000. Moreover, SMC had not been named as an additional insured on the policy.

SMC turned the case over to plaintiff, its own liability insurer. Plaintiff tendered the defense to Federal, which initially declined because SMC was not an additional insured, and because the claim allegedly did not arise from nonperformance of the lease by defendant, as required by the lease's indemnity provision. Subsequently, after considering a policy provision that treated lessors as insureds, Federal informed plaintiff it would defend SMC, under a reservation of rights, after its defense and settlement costs exceeded $250,000. Federal later took the position that defense costs did not count toward that retained amount.

Plaintiff proceeded to defend SMC, and settled Aguiluz's suit. Plaintiff expended $300,000 in settlement and $84,101 for defense costs. Plaintiff then commenced this action, to recover what it had paid, and also attorney fees under a provision of the leases allowing them to the prevailing party in an action to enforce the leases or recover damages by reason of a default under them.

At trial, in addition to the facts stated above, plaintiff showed that in March 2003 the West Hollywood Planning Commission had found Sky Sushi's operation to be a nuisance and that its conditional use permit had been

fraudulently obtained. These findings were based on sheriff's department reports—not admitted at trial for their truth—that Sky Sushi's security guards were not licensed as required; some had ignored crimes committed in their presence; and there had been numerous criminal incidents at the club or outside it. Sky Sushi had appealed the revocation of its permit to the city council, which in June 2003 affirmed, again finding that the club's operation had created a nuisance, for much the same reasons as the planning commission had cited.

In opposition to defendant's contention that subrogation was barred by the subrogation waiver in paragraph 19 of the leases, plaintiff asserted that defendant's failure to obtain liability insurance fully covering SMC for $1 million constituted both nonperformance of a condition precedent to the subrogation waiver and a failure of consideration for it. Plaintiff also argued that defendant, through Sky Sushi's conduct, had violated two other lease obligations, proscribing nuisance on the premises and requiring acquisition of certain permits. Those violations had given rise to the Aguiluz litigation, and defendant had been responsible under the lease to indemnify SMC for the case. Defendant's failure to perform also excused the subrogation waiver.

The court ruled for defendant. In its statement of decision, the court held that the subrogation waiver operated, as part of a mutual release, so long as the risk was covered by insurance, whether the tenant's or (as here) landlord's insurance. The waiver applied to insured risks, whereas the leases' indemnity provision applied to uninsured liabilities. Moreover, the consideration supporting the subrogation waiver was the same as covered the other provisions of the leases, namely the parties' promises "and other good and valuable consideration," as the leases recited. The statement of decision did not directly opine about plaintiff's claims of lease violations regarding permits and nuisance, although in its tentative decision the court had stated that, even assuming such breaches had occurred, they would not constitute a failure of consideration for the waiver. The judgment awarded defendant $76,722 in attorney fees.

## DISCUSSION

■ Waivers of subrogation, like the one defendant asserted in this case, are not unfamiliar in California. (See *Davlar Corp. v. Superior Court* (1997) 53 Cal.App.4th 1121, 1125 [62 Cal.Rptr.2d 199] (*Davlar*) [directing summary judgment by reason of such a waiver].) As here, they often appear together with or on account of waivers or releases of rights between contracting parties, with respect to claims covered by insurance. (See *id.* at p. 1124, fn. 1;

*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194 [32 Cal.Rptr.2d 144] (*Lloyd's*) [waiver of rights for damages covered by insurance barred insurer's subrogation suit].)

Claiming entitlement to subrogation against defendant notwithstanding the release and subrogation waiver contained in paragraph 20 of the leases, plaintiff asserts essentially the same contentions as it did below. Primary among these is that defendant's failure to obtain the full amount of insurance required by paragraph 17 of the leases precludes enforcement of the subrogation waiver, for several contractual reasons.[1] Plaintiff relies heavily on the New York decision in *Liberty Mutual Ins. Co. v. Perfect Knowledge, Inc.* (N.Y.App.Div. 2002) 299 A.D.2d 524 [752 N.Y.S.2d 677] (*Liberty Mutual*).

In *Liberty Mutual*, a tenant's contractor caused a fire that damaged the building. The landlord's insurer paid $1 million for losses the landlord suffered. The insurer then sued the tenant, in subrogation, for negligence and breach of contract. The trial court granted the insurer partial summary judgment, striking the tenant's affirmative defense of a subrogation waiver in the lease, and denied the tenant's motion for summary judgment based on that waiver. After first noting that subrogation waivers "are generally valid and enforceable" (*Liberty Mutual, supra,* 752 N.Y.S.2d at p. 678), the appellate division affirmed. The tenant had breached three provisions of the lease requiring insurance, by obtaining only two-thirds the required amount of liability coverage, failing to list the landlord as an insured, and hiring a contractor who did not have liability insurance. The court explained its holding as follows: "Waiver of subrogation provisions exist as part and parcel of a risk allocation agreement whereby liability is shifted to the insurance carriers of the parties to the agreement [citation]. Such an agreement is necessarily premised on the procurement of insurance by the parties. Here, however, [tenant] breached certain provisions of the lease with respect to the procurement of insurance. . . . Without the procurement of insurance, the shifting envisioned under the agreement could not take place, and the agreement was frustrated. Therefore, [tenant] is not entitled to enforcement of the waiver provisions in the lease." (*Liberty Mutual, supra,* 752 N.Y.S.2d at pp. 678–679.)

---

[1] Plaintiff occasionally refers also to defendant's failure to name SMC as an additional insured on the policy. This alleged breach, however, was largely technical and inconsequential, inasmuch as Federal's policy did cover SMC, as defendant's landlord. We therefore do not further consider the additional insured question. Our analysis of its significance would in any event be the same as concerns the coverage deficiency.

*Liberty Mutual* does not sustain plaintiff's effort to render inapplicable the present subrogation waiver. First, the opinion neither quotes nor summarizes the waiver and other relevant provisions of the lease there, the relationship among which is assumed: Second, the decision's rationale—that the plaintiff's failure to perform insurance requirements prevented the shifting of risk to insurance that underlies a subrogation waiver—is incongruent with the leases in the present case, which plainly provide that liability and subrogation will be waived as to all risks covered by *"any* insurance policies carried by the parties." (Leases, ¶ 20, italics added; cf. *Lloyd's, supra,* 26 Cal.App.4th at pp. 1196–1198 [subrogation waiver applicable where loss covered by insurance other than that required by contract].) Thus, plaintiff's insistence that the waiver here was premised on defendant's procurement of full insurance is inconsistent with the intent of the parties, as reflected by the leases' terms. (See Civ. Code, §§ 1636, 1638, 1639, 1642, 1644.)

█ Plaintiff next argues that defendant's procurement of full insurance was a condition precedent to operation of the subrogation waiver. This argument is based entirely on *Liberty Mutual'*s statement that agreements to waive subrogation are "necessarily premised on the procurement of insurance . . . ." (*Liberty Mutual, supra,* 752 N.Y.S.2d at p. 678.) But here there was such insurance (plaintiff's), and that was sufficient to engage the written waiver. And there was no indication in the leases that defendant's insurance obligation was a condition precedent to the mutual waivers. "The rule is that provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. [Citations.]" (*Rubin v. Fuchs* (1969) 1 Cal.3d 50, 53 [81 Cal.Rptr. 373, 459 P.2d 925].)[2]

Plaintiff also asserts that defendant's failure to carry a full $1 million of insurance constituted a failure of consideration for the subrogation waiver. The underlying premise, that defendant's insurance was the particular consideration for the waiver, has no basis. The consideration for the leases, including all of their covenants, comprised the mutual promises of the parties, as a whole. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 212, p. 247.) A partial breach of defendant's insurance obligation would not constitute a failure of consideration for the entire leases, the actual meaning of the concept.

Plaintiff finally contends that the subrogation waiver should not be enforced because to do so would defeat the parties' intent and expectations that defendant be responsible, and indemnify SMC, for Sky Sushi's nuisance and its consequences. Plaintiff's argument is based on the leases' provision that if

---

[2] In at least one other place, the leases provide explicitly for a condition precedent.

defendant sublet the premises, it would yet remain liable for performance of its lease obligations. Plaintiff argues that defendant breached two such obligations, that Aguiluz's damages arose from those breaches, and that under the leases' indemnity provision plaintiff should have indemnified SMC for those damages.

There are several flaws in this contention. First, as a matter of law defendant did not breach the lease obligation that defendant obtain, within 30 days of the leases' effective date, all permits necessary to operate defendant's business. Plaintiff's contention that defendant violated this provision, because Sky Sushi obtained its own conditional use permit fraudulently, is meritless. The lease provision concerned plaintiff's own permits at the outset of the leases, not the permits of and for a subsequent subtenant.

The second lease obligation that plaintiff advances directly concerns nuisance. It appears in paragraph 16 of the leases, entitled "REPAIRS AND MAINTENANCE," which commences, "Tenant shall . . . keep and maintain the Premises in a clean, sanitary order and in good condition and repair during the term of this Lease . . . . Tenant may not cause or permit waste or nuisance in or about the Premises. . . ." Plaintiff's theory is that this provision obligated defendant not to tolerate the nuisance that West Hollywood found Sky Sushi to be conducting. Defendant responds that the context of the nuisance provision—a paragraph concerning maintenance of the premises—establishes that it concerns the physical condition of the premises, not activities or dynamic operation by a subtenant. Moreover, the municipal findings of nuisance were made six and 10 months, respectively, after the attack on Aguiluz.

But even assuming arguendo that Aguiluz's claim against SMC arose out of a breach by defendant of the nuisance provision of the leases, enforcement of the subrogation waiver neither contravened nor was barred by the leases' indemnity provision. As we observed at the outset, the subrogation waiver provision was part of a mutual release of claims and damages that were covered by insurance, as Aguiluz's were. The indemnity paragraph provided a coordinate allocation, between the parties, of responsibility for liabilities and losses that were not covered by insurance. (Accord, *Davlar, supra*, 53 Cal.App.4th at p. 1125.) "The existence of both clauses in the same contract confirms . . . that they serve different purposes and are *not* inconsistent." (*Ibid.*) Enforcement of the subrogation waiver in this case did not contradict, but followed, the intentions of the parties.

## DISPOSITION

The judgment is affirmed. Defendant shall recover costs and reasonable attorney fees on appeal, the amount to be determined by the trial court.

Rubin, J., and Bigelow, J., concurred.