Filed 5/25/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>PATRICK SOON-SHIONG et al.,<br><br>  Defendants and Respondents. | D072213<br><br><br>(Super. Ct. No.<br> 37-2016-00030867-CU-SL-CTL) |

APPEAL from an order of the Superior Court of San Diego County,

Gregory W. Pollack, Judge.  Affirmed.

Weisslaw, Joel E. Elkins, David C. Katz and Joseph H. Weiss for Plaintiff and

Appellant.

Wilson Sonsini Goodrich & Rosati, Boris Feldman, Cynthia A. Dy and Cheryl W.

Foung for Defendants and Respondents Patrick Soon-Shiong, Barry J. Simon, Steve

Gorlin, Michael D. Blaszyk, Henry Ji, Richard Kusserow, John T. Potts, Jr., Robert

Rosen, John C. Thomas, Jr., Richard Gromberg and NantKwest, Inc.

Hunton & Williams, Philip J. Eskenazi, and Andrew J. Peterson for Defendant and

Respondent Mayer Hoffman McCann.

Plaintiff Stephen Bushansky filed a shareholder derivative action in San Diego Superior Court on behalf of nominal defendant NantKwest, Inc. Based on a forum selection provision contained in NantKwest's certificate of incorporation that generally designates Delaware as the forum for shareholder derivative actions, the trial court dismissed Bushansky's suit.

On appeal, Bushansky argues that the forum selection provision was never triggered since a condition precedent to its operation was never met. That condition requires that Delaware courts have personal jurisdiction over all indispensable parties named as defendants. Since Delaware courts lacked jurisdiction over one of the defendants *at the time the action was filed* in California, Bushansky urges that the condition was not met and, thus, the forum selection provision was not triggered.

The provision, however, does not specify that personal jurisdiction must be determined as of the date an action is filed and no later. In fact, it is silent as to when personal jurisdiction in Delaware must exist. Faced with that silence, we—in accord with a well-established principle of contract law—presume that the parties intended a reasonable timeframe for the condition to be fulfilled. As we shall explain, here the condition was satisfied within a reasonable amount of time. Accordingly, dismissal based on the forum selection clause was proper.

FACTUAL AND PROCEDURAL BACKGROUND

Bushansky filed a shareholder derivative action in San Diego Superior Court on behalf of nominal defendant NantKwest, a Delaware corporation headquartered in California. The complaint alleged causes of action against NantKwest's directors and

2

officers for breaches of fiduciary duty. It also alleged a malpractice claim and aiding/abetting claim against Mayer Hoffman McCann PC (the Auditor), an accounting firm that served as NantKwest's auditor. The Auditor is a Missouri professional corporation with offices in California.

NantKwest moved to dismiss the suit based on forum non conveniens, arguing that a forum selection provision in its certificate of incorporation mandated dismissal. (Code Civ. Proc., §§ 410.30, 418.10.) The provision states, in relevant part:

> "Unless the Corporation consents in writing to the selection of an alternative forum and to the fullest extent permitted by law, the Court of Chancery of the State of Delaware (or, if such court lacks jurisdiction, any other state or federal court located within the State of Delaware) shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation . . . ; in all cases *subject to the court's having personal jurisdiction over the indispensable parties named as defendants*." (Italics added.)

The Auditor joined NantKwest's motion to dismiss and demurred. All the other defendants demurred too. The Auditor's demurrer specified that "for this derivative action, [it] consents to venue in the Delaware Court of Chancery."

In opposition to NantKwest's motion to dismiss, Bushansky argued that the final clause of the forum selection provision—"in all cases subject to the court's having personal jurisdiction over the indispensable parties named as defendants"—was not met. It was (and is) undisputed that there was no personal jurisdiction over the Auditor in

3

Delaware when the suit was filed in California.[1]  Bushansky asserted that the Auditor's later consent to personal jurisdiction in the Delaware Court of Chancery was insufficient to satisfy the provision's final clause, which Bushansky characterized as a condition precedent to its operation.  Bushansky also argued that the provision was permissive, not mandatory, and that the traditional forum non conveniens factors counseled in favor of hearing the action in California.

The trial court rejected Bushansky's arguments and granted the motion to dismiss. Characterizing the forum selection clause as mandatory and not permissive, it reasoned that the Auditor's later consent to jurisdiction in Delaware satisfied the provision.  The court further concluded that even if the clause was not triggered by the Auditor's postfiling consent, Bushansky could not take advantage of that fact since he "deprived [the Auditor] of the opportunity to consent to jurisdiction at the outset" by failing to "present a litigation demand on [NantKwest's] Board."  (See 1 Witkin, Summary of Cal. Law (11th ed.) Contracts § 846, p. 897 ["A person cannot take advantage of his or her own act or omission to escape liability; if the person prevents or makes impossible the performance or happening of a condition precedent, the condition is excused"].)  It deemed the pending demurrers moot given its ruling on the motion to dismiss.

---

[1]     No party to this action asserted that there was jurisdiction over the Auditor in Delaware when the California suit was filed or that the Auditor was not an indispensable party.

4

DISCUSSION

In this appeal, we must determine whether dismissal was warranted in light of the forum selection clause contained in NantKwest's certificate of incorporation. We conclude it was.

1.    *Background Principles and Standard of Review*

The parties spend considerable time and space debating who has what burden on the crucial issue in this case. We therefore review the applicable principles.

The parties agree that NantKwest's certificate of incorporation constitutes a contractual agreement between the corporation and its shareholders. (See *Airgas, Inc. v. Air Products & Chemicals, Inc.* (Del. 2010) 8 A.3d 1182, 1188 (*Airgas*) ["Corporate charters and bylaws are contracts among a corporation's shareholders"].) Where a plaintiff brings suit in California, the potential applicability of a contractual forum selection clause is raised by the defendant through a motion to dismiss on grounds of forum non conveniens.[2] (*Berg, supra,* 61 Cal.App.4th at p. 358.) As the moving party here, NantKwest bore the initial burden. (See *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) It sought to satisfy that burden by invoking the forum selection

---

[2]    "Forum non conveniens is an equitable doctrine, codified in Code of Civil Procedure section 410.30, under which a trial court has discretion to stay or dismiss a transitory cause of action that it believes may be more appropriately and justly tried elsewhere." (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471 (*Animal Film*).) A motion to dismiss "based on a forum selection clause is a special type of forum non conveniens motion." (*Berg v. MTC Electronics Techs. Co.* (1998) 61 Cal.App.4th 349, 358 (*Berg*).)

5

clause in its certificate of incorporation, arguing that the burden then shifted to the plaintiff to show that enforcement of clause was somehow precluded.

Defendants rely heavily on case law suggesting that where a "mandatory" forum selection clause is involved, the party opposing enforcement of the clause bears the burden of proof. (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1679–1680 (*Cal-State*); see *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 (*Smith*).) It is true that a party seeking to avoid enforcement of an *otherwise applicable* forum selection clause has the burden of proving that such enforcement would be unreasonable. (*Smith*, at p. 496.) But defendants' burden-shifting argument puts the cart before the horse in assuming the forum selection clause is otherwise applicable. Whether the clause applies to the facts of this case— where the Auditor consented to personal jurisdiction in Delaware only after the lawsuit was filed in California—presents a preliminary question of contract interpretation. If no extrinsic evidence was presented, as none was in this case, we review that issue de novo. (*Animal Film*, *supra*, 193 Cal.App.4th at p. 471; *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196 (*Intershop*).)

Relying on *Cal-State*, *supra*, 12 Cal.App.4th 1666, defendants suggest that to some extent our review is for substantial evidence. (*Id.* at p. 1680.) This contention overreads *Cal-State*, which said "a substantial-evidence standard of review applies where

6

a forum has been selected by contract." (*Ibid.*)[3] That statement was made in reference to assessing the trial court's decision as to the reasonableness of enforcement. But Bushansky is not arguing that we should decline to enforce the provision as unreasonable; rather he contends the provision does not apply—i.e., the "forum has [*not*] been selected by contract" under the present circumstances. (*Ibid.*) We thus review the issue de novo given the absence of conflicting evidence.

2.     *The Provision Was Triggered*

With those background principles in mind, we turn to interpretation of the forum selection provision in this case. Central to this appeal is its final clause: "in all cases subject to the court's having personal jurisdiction over all indispensable parties named as defendants."

As a threshold matter, we observe that the parties—at least in certain parts of their briefing—seem to agree that Delaware law governs the interpretation of NantKwest's certificate of incorporation. Yet they also cite law from a multitude of other jurisdictions, and defendants at one point even assert that California law militates in favor of a particular interpretation of the certificate. For the sake of clarity, we note that as a

---

3     Defendants' assertion that "[a] substantial-evidence standard of review applies where there is a forum-selection provision" is ill-advised for another reason. "There is a split of authority regarding the appropriate standard of review on whether a forum selection clause should be enforced through a motion to dismiss for forum non conveniens." (*Quanta Computer Inc. v. Japan Communications Inc.* (2018) 21 Cal.App.5th 438, 446 (*Quanta*).) " 'The *Cal-State* decision,' " which defendants rely upon, " 'represents the minority view and has been criticized as inconsistent with Supreme Court authority . . . . [T]he majority of cases . . . apply the abuse of discretion standard.' " (*Quanta*, at pp. 446–447, quoting *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 148.)

California court we generally apply California law except to the extent there is a conflict, in which case Delaware law governs the interpretation. (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 580–581; see *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2003) 114 Cal.App.4th 434, 442–443; see also *Hill International, Inc. v. Opportunity Partners L.P.* (Del. 2015) 119 A.3d 30, 38 ["Because corporate charters and bylaws are contracts, our rules of contract interpretation apply"], citing *Airgas*, *supra*, 8 A.3d at p. 1188.)

Turning to the language of the provision, we agree with Bushansky that the final clause's use of "subject to" indicates it is a condition precedent to Delaware courts being "the sole and exclusive forum" for derivative actions. "A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises." (13 Williston on Contracts (4th ed.) § 38:7.) And, "the words 'subject to' in a contract usually indicate a condition to one party's duty of performance and not a promise by another." (13 Williston on Contracts (4th ed.) § 38:16; accord, *Rubin v. Fuchs* (1969) 1 Cal.3d 50, 54 [" 'Subject to' is generally construed to impose a condition precedent"].) Defendants respond that "[c]ourts reject the conclusion that 'subject to' invariably and necessarily constitutes a condition precedent." That may well be true. (E.g., *Ransom v. Penn Mutual Life Insurance Co.* (1954) 43 Cal.2d 420, 423–425.) But it doesn't explain why this particular "subject to" isn't one.

Yet concluding that the final clause is a condition precedent to Delaware's status as the "sole and exclusive forum" does not end our inquiry. The clause does not, in plain

8

language, state *when* the Delaware courts must "hav[e] personal jurisdiction." Thus, simply put, the question before us is: When does personal jurisdiction over all indispensable parties have to exist?

Bushansky asserts that it must exist at the time the action is filed. He contends such a time limitation is inherent in the term "personal jurisdiction," since jurisdiction is normally "determined at the time of filing." This argument, while in some respects appealing, suffers a fatal flaw. It primarily contemplates establishing personal jurisdiction through the traditional minimum contacts analysis. (See, e.g., *MacQueen v. Union Carbide Corporation* (D. Del. Dec. 3, 2014, Civ. Action No. 13-831-SLR-CJB) 2014 U.S.Dist. Lexis 167609, at p. *24 ["When courts assess whether there is personal jurisdiction over a party (e.g., by engaging in a 'minimum contacts' analysis), they typically do so by examining whether jurisdiction exists either at the time the cause of action arose, the time the suit was filed, or within a reasonable time prior to the filing of the lawsuit"].) As defendants point out, jurisdiction can also be established through consent, which often occurs postfiling. (E.g., *Stangvik*, *supra*, 54 Cal.3d at p. 752.) Thus, we find it untenable to read a rigid time limitation into the use of the term "personal jurisdiction."

Accordingly, we are left with the conclusion that the contract is silent as to the time in which the condition must be fulfilled. In light of that silence, we "apply the rule that where no time is fixed for the performance of a condition precedent, it will be presumed that it is to be performed within a reasonable time." (*Gluckman v. Holzman* (Del. Ch. 1947) 51 A.2d 487, 490; accord, Civ. Code, § 1657; *Wagner Construction Co.*

9

*v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30 [referring to "the general principle of contract law . . . that '[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed' "]; *McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1351 ["it is well-established principle of contract law that '[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed' "].)

In our view, a reasonable time for satisfaction of this condition does not end when the suit is filed.  Such would essentially rewrite the clause to include a very specific hard and fast deadline where there is none.  Not to mention that because defendants do not generally receive notice of a lawsuit until after it is filed, in most every case it would effectively obviate the possibility of triggering the clause through consent-based personal jurisdiction.  That would not be reasonable.

Moreover, we note that we do not tread entirely new ground in concluding that a forum selection clause may be triggered by postfiling activity.  For example, other jurisdictions have recognized that defenses raised during a suit may implicate a contractual forum selection clause.  (See *General Protecht Group, Inc. v. Leviton Mfg. Co., Inc.* (Fed. Cir. 2011) 651 F.3d 1355, 1358–1359 [forum selection clause implicated by license defense]; *John Wyeth & Brother Ltd. v. CIGNA International Corp.* (3d Cir. 1997) 119 F.3d 1070, 1076 [forum selection clause implicated where "[a]greement [was] raised as a defense"]; *Schering Corp. v. First Databank, Inc.* (D.N.J. 2007) 479 F.Supp.2d 468, 471 [similar].)

10

Of course, at some point, postfiling consent may simply be too late to trigger this clause. While we decline today to draw an arbitrary line as to when that would be, we caution that this opinion should not be read as an endorsement of unwarranted and unfair gamesmanship through a tactically timed consent to personal jurisdiction. In other words, we recognize that a defendant in a position like the Auditor's might well be tempted to withhold its consent to Delaware jurisdiction until it deems it tactically advantageous to trigger the forum selection clause. We have little doubt that such gamesmanship would be outside the bounds of a reasonable timeframe.

Today, however, we need not decide this clause's outer temporal limit. It is sufficient to say that the Auditor's consent came within a reasonable time to satisfy the condition.[4] The action was filed September 6, 2016, and the Auditor consented to Delaware jurisdiction in its demurrer filed November 3, 2016. In providing that consent, the Auditor specifically requested that its demurrer be heard *after* the motion to dismiss based on the forum selection clause, which was filed only a few weeks later by NantKwest on November 28, 2016. On these facts, we do not discern even a specter of

---

[4]     We recognize that " '[w]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' " (*Wagner*, *supra*, 41 Cal.4th at p. 30.) However, when "the essential facts are undisputed and only one reasonable inference may be drawn therefrom, the issue of unreasonable delay . . . is a question of law for this court." (*Allstate Ins. Co. v. Gonzalez* (1995) 38 Cal.App.4th 783, 790.) The essential facts here—i.e., when the action was filed and when the Auditor consented—are undisputed. We see only one reasonable inference from those facts, rendering it appropriate for us to decide the reasonableness of the Auditor's timing as a matter of law.

11

gamesmanship that might indicate the reasonable time for establishing personal jurisdiction in Delaware had passed.

We recognize that our conclusion parts ways with an unpublished appellate case from Washington upon which Bushansky relies heavily: *Shatas v. Synder* (Wash.Ct.App. Oct. 17, 2016, No. 73716-3-I) 2016 Wash.App. Lexis 2517 (*Shatas*). *Shatas* considered a forum selection provision nearly identical to the one at issue here: "Under the plain language of [the] provision, Delaware is the 'sole and exclusive forum' for any derivative action except when (1) the corporation consents in writing to the selection of an alternative forum' or (2) Delaware lacks 'personal jurisdiction over the indispensable parties named as defendants.' " (*Shatas*, *supra*, 2016 Wash.App. Lexis 2517, at p. *8.) Based on that provision, the defendants moved to dismiss a shareholder derivative action brought in Washington state court. (*Id.* at pp. *3–*4.) Despite the plaintiff's argument that Delaware courts lacked jurisdiction over one of the defendants, the trial court granted the motion—conditioned on that defendant's consent to personal jurisdiction in Delaware. (*Id.* at p. *4.)

On appeal, the plaintiff successfully argued "that the trial court misapplied the law when it concluded that [a defendant's] postfiling willingness to consent to Delaware jurisdiction was sufficient to establish personal jurisdiction." (*Shatas*, *supra*, 2016 Wash.App. Lexis 2517, at p. *15.) The appellate court deemed the postfiling consent "irrelevant in determining jurisdiction" since " ' "[j]urisdiction is normally determined as of the date of the filing of the suit." ' " (*Ibid.*) In support of this assertion, *Shatas* relied on cases that considered whether jurisdiction was established through the traditional

12

minimum contacts analysis. (*Ibid.*)[5] As is true here, the defendants relied on authority showing that a party could consent to personal jurisdiction; *Shatas* dismissed that jurisprudence as inapposite since it did "not stand for the proposition that postfiling conduct can *invalidate* properly invoked jurisdiction." (*Id.* at p. *16.) As to cases where courts "dismissed suits pursuant to forum selection clauses 'even when the clauses were triggered by events that took place during the course of litigation,' " *Shatas* reasoned similarly: "But none of [those] cases . . . considered whether a party's postfiling consent could *invalidate* otherwise proper jurisdiction." (*Id.* at pp. *16–*17, italics added.)

Bushansky contends that, given its factual similarity, *Shatas* is "highly persuasive authority." However, two particular aspects of *Shatas* cause us concern. First of all, the case is unpublished. Although citation of "unpublished opinions from other jurisdictions for their persuasive value does not violate" the California Rules of Court (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 247, fn. 11; cf., Cal. Rules of Court, rule 8.1115), we query how much persuasive value a Washington court would even assign *Shatas*. Washington's General Rules provide that "[u]npublished opinions have no precedential value and are not binding on any court. However, unpublished opinions of the [Washington] Court of Appeals filed on or after March 1, 2013, may be cited as non-binding authorities, if identified as such by the citing party, and may be accorded such

---

5    See *Central States, Southeast & Southwest Areas Pension Fund v. Phencorp Reinsurance Co.* (7th Cir. 2006) 440 F.3d 870, 875 ["in our personal jurisdiction analysis, we must determine if Phencorp had sufficient contacts with the United States as a whole"]; *Allen v. Russian Federation* (D.D.C. 2007) 522 F.Supp.2d 167, 193 ["the filing of a 'lawsuit' (not a complaint) determines the time in which personal jurisdiction contacts are established"].

persuasive value as the court deems appropriate." (See Wash. Gen. Rules, rule 14.1(a).) Another subdivision of the same rule provides "Washington appellate courts should *not*, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." (*Id.*, rule 14.1(c), italics added.)

More importantly, however, we question the logic underlying *Shatas*'s conclusion that postfiling consent is irrelevant. *Shatas* rejected arguments seemingly similar to NantKwest's on the basis that postfiling consent could not "*invalidate* properly invoked jurisdiction," presumably referring to the jurisdiction already invoked in Washington. (*Shatas*, *supra*, 2016 Wash.App. Lexis 2517, at p. *17.) However, the notion that forum selection clauses "tend to 'oust' a court of jurisdiction" has been dismissed as "hardly more than a vestigial legal fiction." (*The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 12; accord, *Smith*, *supra*, 17 Cal.3d at p. 495.) "[P]arties may not *deprive* courts of their jurisdiction over causes by private jurisdiction." (*Smith*, at p. 495.) Rather, the enforcement of forum selection clauses stems from courts' "discretion to *decline* to exercise jurisdiction in recognition of the parties free and voluntary choice of a different forum." (*Ibid.*) Here, we say merely that a court properly declines to exercise jurisdiction based on a contractual forum selection clause like this one when consent to jurisdiction in the alternate forum is provided within a reasonable period of time.[6]

---

6    In light of this conclusion, we do not reach defendants' alternative argument that the condition should be excused because Bushansky prevented the Auditor from consenting before the suit was filed. Nor do we reach their other argument regarding Bushansky's purported failure to establish that the Auditor was an indispensable party within the meaning of the clause.

3.    *The Provision Is Mandatory*

Bushansky also argues that the clause in this case is permissive, not mandatory, and thus—even if applicable—requires us to engage in a traditional forum non conveniens analysis.  (See *Animal Film*, *supra*, 193 Cal.App.4th at p. 472.)  Bushansky's position is unavailing.  Subject to two exceptions inapplicable here, the provision states "*to the fullest extent permitted by law*, the Court of Chancery of the State of Delaware (or, if such court lacks jurisdiction, any other state or federal court located within the State of Delaware) *shall* be the *sole and exclusive* forum . . . . for *any* derivative action . . . ."  (Italics added.)  Courts have consistently found similar language—and even patently less emphatic language—sufficient to render forum selection provisions mandatory.  (See, e.g., *Intershop*, *supra*, 104 Cal.App.4th at p. 196 [" '*To the extent permitted by the applicable laws* the parties *elect* Hamburg to be *the* place of jurisdiction' "], italics modified from original; *Cal-State*, *supra*, 12 Cal.App.4th at p. 1672, fn. 4 [" '[A]ny appropriate state or federal district court located in the Borough of Manhattan, New York City, New York *shall* have *exclusive* jurisdiction over *any* case of controversy arising under or in connection with this Agreement' "], italics added.)  As in those cases, the provision here is mandatory.[7]

---

[7]    "[I]f there *is* a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect." (*Berg*, *supra*, 61 Cal.App.4th at p. 358.)  Bushansky does not argue that enforcement would be unfair or unreasonable.  In fact, he explicitly disavowed that argument in his briefing:  "Plaintiff here does not argue that the Forum Selection Clause is unenforceable due to fraud or overreaching, but that the contractual duty in the Forum Selection Clause never arose due to the non-occurrence of the condition precedent."

15

DISPOSITION

The order is affirmed.  Defendants shall recover costs on appeal.


DATO, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.