Opinión disidente en parte y de conformidad en parte emi-tida por la
Jueza Asociada Señora Pabón Charneco.
Sin fundamento jurídico alguno, en el día de hoy una Mayoría de este Tribunal se equivoca en Derecho al resolver que por virtud de los estatutos corporativos adoptados por una corporación, se puede prescindir del requisito en-contrado en ley de demostrar un propósito válido para ins-peccionar los libros y documentos corporativos. Al concluir lo anterior, la Mayoría erróneamente determinó que las Sras. Elsie Herger Pacheco, Anabel Hernández Circuns y Margarita Ostolaza Bey (en adelante, las “peticionarias”) tenían derecho a inspeccionar ciertos documentos corpora-tivos de Calidad de Vida Vecinal, Inc. (en adelante, la “re-currida”), a pesar de no haber demostrado tener un propó-sito válido para la inspección solicitada.
*1028 Por entender que el Art. 1.08(b) de la Ley Núm. 164-2009, conocida como Ley General de Corporaciones, 14 LPRA sec. 3508(b), expresamente prohíbe que los estatu-tos corporativos contengan disposiciones contrarias a las leyes o al Certificado de Incorporación, disiento.
Los hechos que dieron lugar a la controversia de autos están correctamente expuestos en la Opinión Mayoritaria. Por lo tanto, me limito a discutir el Derecho, aplicarlo y explicar mi postura en cuanto a lo erróneamente resuelto por la Mayoría del Tribunal.
I
Según la obra del reconocido tratadista y profesor de Derecho Corporativo, el Lie. Carlos Díaz Olivo, los estatutos corporativos son el reglamento interno de la corpora-ción y su propósito es establecer la manera en que la misma habrá de operar. C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 1999, pág. 46. Se trata de las reglas o leyes privadas promulgadas por la corporación para regular, gobernar y controlar sus propias acciones, asuntos y preocupaciones, así como las relaciones entre sus accionistas, directores y oficiales, entre sí y para con la corporación. 8 Fletcher, Cyclopedia of the Law of Private Corporations Sec. 4166 (Perm. Ed. 2010). Los estatutos corporativos son documentos privados que no deben ser presentados ante agencia gubernamental alguna. Díaz Olivo, op. cih, pág. 46.
En Puerto Rico, el Art. 1.08 de la Ley Núm. 164-2009 (14 LPRA see. 3508) es la disposición legal que gobierna lo relativo a la adopción, enmienda o derogación de los esta-tutos corporativos de una corporación organizada en nues-tra jurisdicción. En lo pertinente, el Art. 1.08(b) de la Ley Núm. 164-2009, supra, dispone lo siguiente:
Los estatutos podrán contener cualquier disposición que no sea contraria a la ley o al certificado de incorporación, refe- *1029 rente a los negocios de la corporación, a la marcha de sus asuntos, y los derechos o poderes de la corporación o de sus accionistas, directores, oficiales o empleados. (Énfasis nuestro).
*1028 I
*1029 Conforme a lo anterior, existe una prohibición expresa contra la adopción de estatutos corporativos que contra-vengan lo dispuesto por ley o el Certificado de Incorpora-ción.
Como se conoce, nuestra ley corporativa está basada en la Ley General de Corporaciones de Delaware, 8 Del. C. sec. 101 et seq. Véase Exposición de Motivos de la Ley Núm. 164-2009. Al igual que nuestra propia ley, la See. 109(b) de la Ley General de Corporaciones de Delaware, 8 Del. C. sec. 109(b), prohíbe que los estatutos corporativos de una corporación sean contrarios a la ley o al Certificado de Incorporación.(1) De hecho, el Art. 1.08(b) de la Ley Núm. 164-2009, supra, es una traducción ad verbatim de la Sec. 109(b) de la Ley General de Corporaciones de Delaware, supra. Así las cosas, la jurisprudencia emitida por los tribunales de dicho estado es altamente persuasiva para nuestro correspondiente análisis.
El Tribunal Supremo de Delaware ha resuelto que en casos donde esté en controversia la validez de los estatutos corporativos de una corporación, los mismos se presumen válidos y los tribunales deben interpretarlos de manera compatible con la ley, antes de llegar a declararlos nulos. Frantz Mfg. Co. v. EAC Industries, 501 A.2d 401, 407 (Del. 1985); Boilermakers Local 154 Retirement Fund v. Chevron Corp., 73 A.3d 934, 948-949 (Del. Ch. 2013); Fletcher, supra, Secs. 4184-4185. Al interpretar un estatuto corporativo, los tribunales de Delaware utilizan los mis- *1030 mos principios aplicables a la interpretación de las leyes y los contratos. Bernstein v. TractManager, Inc., 953 A.2d 1003, 1007 (Del. Ch. 2010); Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342-343 (Del. 1983); Fletcher, supra, Sec. 4195.
No obstante, si luego del correspondiente análisis el tribunal determina que el estatuto corporativo es incompatible con la ley, el mismo adolece de nulidad. Frantz Mfg. Co. v. EAC Industries, supra, pág. 407; Kerbs v. California Eastern Airways, Inc., 90 A.2d 652, 659 (Del. 1952); Gaskill v. Gladys Belle Oil Co., 146 A. 337, 340 (Del. Ch. 1929). El Tribunal Supremo de Delaware incluso ha sido categórico al expresar que es nulo un estatuto corporativo que sea contrario a la Ley General de Corporaciones de Delaware. Crown EMAK Partners, LLC v. Kurz, 992 A.2d 377, 398 (Del. 2010). Además, los estatutos corporativos deben ser razonables en cuanto a su aplicación. Frantz Mfg. Co. v. EAC Industries, supra, pág. 407; Schnell v. Chris-Craft Industries, Inc., 285 A.2d 437, 439 (Del. 1971); State ex rel. Brumley v. Jessup & Moore Paper Co., 77 A. 16, 19 (Del. 1910).
De igual manera, el Tribunal Supremo de Delaware ha expresado que conforme a la Sec. 109(b) de la Ley General de Corporaciones de Delaware, supra, adolece de nulidad un estatuto corporativo que se encuentra en conflicto con lo dispuesto en el Certificado de Incorporación. Airgas, Inc. v. Air Products and Chemicals, Inc., 8 A.3d 1182, 1189 (Del. 2010); Centaur Partners, IV v. National Intergroup, Inc., 582 A.2d 923, 929 (Del. 1990); Burr v. Burr Corp., 291 A.2d 409, 410 (Del. Ch. 1972); Prickett v. American Steel & Pump Corp., 253 A.2d 86, 88 (Del. Ch. 1969).
II
Pasemos ahora a analizar la disposición legal que conforme a lo erróneamente resuelto por la Opinión Mayorita *1031 ria, fue objeto de modificación por virtud de los estatutos corporativos adoptados por la recurrida.
El derecho de los accionistas a inspeccionar los libros de una corporación cumple el propósito de “asegurar la responsabilidad (“accountability’) de la gerencia corporativa a sus accionistas”. Díaz Olivo, op. cit., pág. 225. Por otro lado, la reglamentación del derecho de inspección por virtud de ley “responde al deseo de evitar interrupciones innecesarias en la administración de la corporación”. íd. El balance de estos dos intereses se logra condicionando la inspección a que el accionista que la solicita cumpla con los requisitos que dispone la ley para ello, lo cual incluye tener un propósito válido. Central Laborers Pension Fund v. News Corp., 45 A.3d 139, 144-145 (Del. 2012).
En lo pertinente, el Art. 7.10 de la Ley Núm. 164-2009 (14 LPRA see. 3650) dispone que cualquier accionista ten-drá el derecho a examinar y hacer copias o extractos del registro de acciones, la relación de accionistas y los demás libros de la corporación durante horas regulares de oficina. Para ello, debe presentar ante la corporación un requerimiento jurado donde se consigne el propósito de la inspec-ción, que debe ser cualquier propósito válido. íd. La propia ley define propósito válido como “un propósito que se relacione razonablemente con el interés de la persona como accionista”. íd. Ante la negativa de la corporación de permitir la inspección solicitada, un accionista tiene el remedio de acudir ante el Tribunal de Primera Instancia para que éste ordene a la corporación a que le permita inspec-cionar los documentos. íd. Cuando se trate de los libros y cuentas de la corporación, que no sean el registro de accio-nes o la relación de accionistas, el accionista debe demos-trar a satisfacción del tribunal su condición de accionista, que ha cumplido con la forma y manera de hacer el requerimiento de inspección y que cuenta con un propósito válido. íd. De ordenar a la corporación que permita la ins- *1032 pección solicitada, el foro primario tiene la facultad discre-cional de imponer cualquier limitación o condición para la inspección de los documentos o cualquier otro remedio que estime justo y razonable. Id.
El Art. 7.10 de la Ley Núm. 164-2009, supra, también proviene de la Ley General de Corporaciones de Delaware, aunque con ciertas diferencias que no son relevantes para resolver la controversia ante nuestra consideración. Domenech v. Integration Corp. et al., 187 DPR 595, 610-611 (2013).(2) No obstante, recientemente este Tribunal tuvo la oportunidad de comparar ambas leyes y determinamos que tanto la See. 220 de la Ley General de Corporaciones de Delaware, 8 Del. C. see. 220, como el Art. 7.10 de nuestra Ley Núm. 164-2009, supra, requieren que quien solicite la inspección sea un accionista y que ostente un propósito válido. Domenech v. Integration Corp. et al., supra, pág. 617. En esa ocasión también determinamos que —aunque el accionista cuente con un propósito válido— “el derecho de inspección no es absoluto porque el propósito válido no puede ser adverso a los intereses de la corporación”. Id., citando a Compaq Computer Corp. v. Horton, 631 A.2d 1, 4 (Del. 1993). Además, resaltamos que el Tribunal Supremo de Delaware consistentemente ha reiterado que una vez el solicitante demuestra que es accionista y que tiene un pro-pósito principal válido para realizar la inspección, cualquier otro propósito ulterior es irrelevante. Id., págs. 617— 618, citando a Northwest Industries, Inc. v. B.F. Goodrich Co., 260 A.2d 428, 429 (Del. 1969), y General Time Corp. v. Talley Industries, Inc., 240 A.2d 755, 756 (Del. 1968).
*1033 Aunque una corporación puede reglamentar el derecho de inspección de libros y documentos de los accionistas mediante los estatutos corporativos, la reglamentación no puede ser incompatible con la ley o con los artículos de incorporación. Fletcher, supra, Vol. 5A, Sec. 2216. Lo anterior es cónsono con nuestro Art. 1.08(b) de la Ley Núm. 164-2009, supra, que como ya discutimos prohíbe que las corporaciones organizadas en nuestra jurisdicción adopten estatutos corporativos que sean contrarios a la ley o al Certificado de Incorporación.
A finales del siglo xix y principios del siglo xx, en controversias donde no existía disposición legal que requiriese tener un propósito válido y la corporación tampoco lo exigía en sus estatutos corporativos, varios tribunales expresaron que no era necesario que el accionista demostrase tener un propósito válido para la inspección. Fletcher, supra, Vol. 5A, Sec. 2221; State v. Cities Service Co., 115 A. 773, 775-776 (Del. 1922); Wyoming Coal Mining Co. v. State, 87 P. 337, 338-339 (Wy. 1906); Foster v. White, 6 So. 88, 89—90 (Al. 1889). Por otro lado, de la misma jurisprudencia surge que la corporación podría negar la solicitud de inspección si entiende que se trata de mera curiosidad o por un propósito inválido o ilegal, en cuyo caso la corporación tendría el peso de la prueba. íd.
No obstante, hoy día se han adoptado leyes donde expre-samente se requiere la existencia de un propósito válido para la inspección de los libros y demás documentos corporativos en todas las jurisdicciones de Estados Unidos, incluyendo la nuestra, convirtiendo a los casos State v. Cities Service Co., supra, Wyoming Coal Mining Co. v. State, supra, y Foster v. White, supra, inaplicables a la con-troversia de autos. Fletcher, supra, Vol. 5A, Sec. 2222. En el caso de Puerto Rico, el Art. 7.10 de la Ley Núm. 164-2009, supra, expresamente requiere que el accionista demuestre tener un propósito válido para la inspección de los documentos corporativos. Permitir lo contrario, tal y como *1034 hizo una Mayoría de este Tribunal en la Opinión que ante-cede, va contra lo dispuesto en el Art. 1.08(b) de la Ley Núm. 164-2009, supra, pues se está avalando un estatuto corporativo que indudablemente contraviene la ley.
III
Los estatutos corporativos de la recurrida los podemos encontrar en el Reglamento de Calidad de Vida Ambiental, Inc. (en adelante, el “Reglamento”). El Art. VIII de dicho Reglamento provee lo siguiente:
ARTICULO VIII - LIBROS Y RECORDS
La Corporación llevará y mantendrá libros de contabilidad, levantará actas de todas las reuniones de [los] miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nombre y dirección de todos los miembros que pertenecen a la Corporación. Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cual-quier miembro bonafide en horas hábiles. La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior. (Enfasis nuestro).(3)
El Tribunal de Primera Instancia dictaminó que por vir-tud del Art. VIII del Reglamento, las peticionarias tenían derecho a inspeccionar los documentos allí mencionados sin la necesidad de demostrar la existencia de un propósito válido. El foro primario fue revocado por el Tribunal de Apelaciones y determinó que, no obstante el lenguaje en-contrado en el Reglamento, el mismo no puede contravenir lo dispuesto por el Art. 7.10 de la Ley Núm. 164-2009, supra.
Según anticipado, como parte de la Opinión Mayorita-ria, erróneamente y sin fundamento jurídico alguno se re-voca al Tribunal de Apelaciones en cuanto al alcance del *1035 Art. VIII del Reglamento y se resuelve que los estatutos corporativos de la corporación recurrida les proveen a sus miembros el beneficio de poder inspeccionar los documen-tos allí mencionados sin la necesidad de un propósito vá-lido, siempre y cuando no sea para hostigar a la corporación. Ello, discutiendo someramente el Art. 1.08 de la Ley Núm. 164-2009, supra, sin atención a que su propio texto veda lo adoptado por la Mayoría de este Tribunal.
Conforme a nuestra discusión en los acápites I y II de esta Opinión, la Ley Núm. 164-2009 explícitamente requiere que exista un propósito válido para la inspección de documentos corporativos, y además prohíbe que un regla-mento o estatuto corporativo sea contrario a la ley. Arts. 7.10 y 1.08(b) de la Ley Núm. 164-2009, supra. La claridad de ambas disposiciones legales no da espacio para interpretaciones adicionales, ya que es norma conocida que cuando la ley es clara y libre de ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 LPRA sec. 14; Pueblo en interés menor EALN, 187 DPR 352, 363 (2012).
En cuanto a la validez del estatuto corporativo en controversia, previo a decretar su nulidad debemos presumir su validez e interpretarlo de manera compatible con la ley. Frantz Mfg. Co. v. EAC Industries, supra, pág. 407. Con ello en mente, cabe destacar que tampoco estamos de acuerdo con la Opinión Mayoritaria en cuanto a que la redacción del Art. VIII del Reglamento tiene el propósito o la intención de eximir a los accionistas de demostrar un propósito válido para inspeccionar los documentos corporativos en él mencionados. Contrario a lo resuelto por una Mayoría del Tribunal, no podemos concluir que la intención de la Junta de Directores era eximir de tal requisito por el mero hecho de no mencionarlo expresamente en el Reglamento. Lo anterior es evidente cuando lo expresado en el Art. VIII del Reglamento no es más que un estatuto *1036 corporativo básico encontrado como modelo en un conocido tratado de Derecho Corporativo.(4)
Así las cosas, de una lectura en conjunto del Art. VIII del Reglamento y los Arts. 1.08 y 7.10 de la Ley Núm. 164-2009, supra, la única interpretación razonable del estatuto corporativo en cuestión es que no exime a los accionistas de demostrar un propósito válido para la inspección de los documentos de la corporación recurrida. Esta interpreta-ción nos permite sostener la validez del Art. VIII del Re-glamento, resultando innecesario decretar su nulidad.
IV
Por último, resta expresar que estoy conforme con lo resuelto en la Opinión Mayoritaria a los efectos de que las peticionarias no demostraron tener un propósito válido para la inspección de los documentos corporativos de la recurrida, de acuerdo con lo exigido por el Art. 7.10 de la Ley Núm. 164-2009, supra.
En la controversia de autos, las peticionarias se limita-ron a alegar en todo momento, como propósito válido para la inspección, el poder conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Directores y establecer cómo se están administrando los fondos pagados mensualmente por sus miembros. Esto, sin más, no es su-ficiente para cumplir con la exigencia de demostrar un pro-pósito válido de acuerdo con el Art. 7.10 de la Ley Núm. 164-2009, supra. De entender que la corporación está siendo mal administrada, el único remedio que tendrían las peticionarias es volver a realizar su solicitud demos- *1037 trando la existencia de un propósito válido para la inspección solicitada. Para ello, las peticionarias deben demostrar mediante preponderancia de la prueba que tienen una base razonable para creer que la corporación recurrida está siendo mal administrada, de manera que los tribunales estén en posición de evaluar si cuentan con un propósito válido para la inspección. Seinfeld v. Verizon Communications, Inc., 909 A.2d 117, 123-125 (Del. 2006). Véase, además, City of Westland Police & Fire Ret. Sys. v. Axcelis Tech., Inc., 1 A.3d 281, 287-288 (Del. 2010).
V
La norma que hoy adopta este Tribunal al permitir que un estatuto corporativo altere la voluntad de la Asamblea Legislativa es contraria a nuestro Derecho Corporativo y además trastoca los cimientos de nuestro ordenamiento ju-rídico en general al permitir que un documento privado vaya por encima de la ley. El resultado correcto en Derecho era determinar que no obstante el lenguaje encontrado en el Art. VIII del Reglamento de la peticionaria, es necesario que sus miembros tengan un propósito válido para la ins-pección de los documentos corporativos. Así las cosas, lo que procedía era confirmar el dictamen del foro apelativo intermedio en toda su extensión, decretando que las peti-cionarias no demostraron contar con un propósito válido para la inspección solicitada y que el Art. VIII del Regla-mento no les exime del requisito de demostrar un propósito válido.
Por todo lo antes expuesto, disiento en parte y estoy conforme en parte con la Opinión Mayoritaria.

 El texto de la Sec. 109(b) de la Ley General de Corporaciones de Delaware, 8 Del. C. sec. 109(b), dispone lo siguiente:
“[...] The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees”. (Enfasis nuestro).

 En Domenech v. Integration Corp. et al., 187 DPR 595, 617 (2013), luego de discutir la trayectoria y evolución de la See. 220 de la Ley General de Corporaciones de Delaware, 8 Del. C. see. 220, determinamos que a diferencia de Delaware, donde se permite la presentación de prueba extrínseca para probar la titularidad sobre acciones únicamente en el caso de los fideicomisos de acciones, nuestro Art. 7.10 de la Ley Núm. 164-2009 (14 LPRA sec. 3650), permite la presentación de evidencia extrínseca para probar la titularidad sobre una acción de manera general. Ello, debido a que, al adoptar nuestro estatuto, el legislador omitió la oración encontrada en la ley de Delaware donde condiciona la presentación de evidencia extrínseca a casos en donde exista un fideicomiso de acciones.

 Apéndice, págs. 78-79.

 Véase 1A Fletcher Corporation Forms Ann. 4th Sec. 1206 (1999) (“The accounts and books of the corporation, or any of them, shall be open to the inspection of the shareholders, at all reasonable business hours”). El mismo tratado provee otros ejemplos de cómo se puede reglamentar la inspección de los libros y documentos corporativos por los accionistas, incluyendo uno similar al de la controversia de autos: “Each shareholder shall have the right to inspect the books and records of the company at any time during regular business hours of the company”. Id., Sec. 1397.