Oliveira v. Quartet Merger Corp. and Pangaea Logistics Solutions Ltd

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of October, two thousand sixteen.

PRESENT:   GERARD E. LYNCH,
           CHRISTOPHER F. DRONEY,
                   *Circuit Judges*,
           CHRISTINA REISS,
                   *Chief District Judge.*[*]

------------------------------------------------------------------------
STEVEN OLIVEIRA,

                   *Plaintiff-Appellee*,


             v.                                        No. 15-3233-cv


QUARTET MERGER CORP., PANGAEA LOGISTICS SOLUTIONS LTD,
                   *Defendants-Appellants.*
------------------------------------------------------------------------

FOR PLAINTIFF-APPELLEE:        EUGENE LICKER (Sara J. Crisafulli, Loeb & Loeb LLP, *on the brief*), Ballard Spahr , New York, New York.

FOR DEFENDANTS-APPELLANTS:     LEO G. KAILAS, ( Edward Peter Grosz, *on the brief*), Reitler Kailas & Rosenblatt LLC, New York, NY.

---

[*] Chief Judge Christina Reiss, United States District Court for the District of Vermont, sitting by designation.

Appeal from a September 30, 2015 judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Quartet Merger Corporation and Pangaea Logistics Solutions Ltd. appeal from an order of the district court granting Plaintiff-Appellee Steven Oliveira's motion for summary judgment and from a final judgment awarding Oliveira damages of $903,910.93. Quartet and Pangaea contend that the district court erred in concluding that no tender requirement existed for Oliveira to convert his shares of Quartet stock into cash at the time of the merger between the two companies. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a grant of summary judgment under Rule 56, construing all evidence in the light most favorable to the non-moving party. *See Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We agree with the district court that there are no genuine disputes of fact in this appeal, only issues of law in interpreting the contract between the parties.

Delaware General Corporation Law § 151(a) provides that every corporation may issue stock in different classes and with different rights and powers. Those classes or series may have "such voting powers, full or limited, or no voting powers, and such

2

designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the certificate of incorporation or of any amendment thereto." Del. Code Ann. tit. 8, § 151(a); *see also Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (concluding that liquidation preferences "must derive from the provisions of the certificate of incorporation that created those preferential rights").

It is well established that "[c]orporate charters and bylaws are contracts among a corporation's shareholders." *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010). "Words and phrases used [in charters] are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used." *Id.* (internal quotation marks omitted).

The Amended Certificate of Incorporation issued by Quartet provides in Article Sixth, paragraph C that:

> [A]ny holder of a share of Common Stock sold in the IPO ("IPO Shares")[1] who voted on the proposal to approve such Business Combination . . . may, contemporaneously with such vote, demand that the Corporation convert his IPO Shares into cash. If so demanded, the Corporation shall, promptly after consummation of the Business Combination . . . , convert such shares into cash.

Joint App'x at 94. The Amended Certificate further provides that a holder of Quartet IPO Shares shall be entitled to payment only if "he demands conversion of his shares in accordance with paragraph C above in connection with any Proxy Solicitation." *Id*. at 95.

---

[1] IPO means "initial public offering." Oliveira held shares of Quartet stock that were sold in the Quartet IPO.

3

The undisputed facts are the following: Plaintiff Oliveira owned IPO shares in Quartet, a special purpose acquisition company formed to merge with another company. In connection with a proposed merger of Quartet and Pangaea, Oliveira voted against the merger and exercised his right in the Amended Certificate of Incorporation to convert his shares to cash at a rate of $10.20 per share if the merger were consummated. Oliveira checked the box on his proxy statement exercising that right but did not tender his shares at that time, as the proxy statement required. The merger was completed on October 2, 2014. Oliveira's Quartet shares were not converted to cash after the merger, but Oliveira was issued Pangaea stock. Oliveira again demanded that the defendants effect his cash conversion right on October 9; Oliveira describes this as an offer to tender his shares, and the defendants dispute that characterization. In any event, Pangaea again refused to convert Oliveira's shares to $10.20 per share in cash. Oliveira then sold his Pangaea shares for less than $10.20 per share to mitigate his damages.

Quartet and Pangaea contend that, in order to exercise his cash conversion rights, Oliveira was required to tender his Quartet shares before the vote on the merger at the shareholders meeting. The Amended Certificate issued by Quartet does not include a tender requirement, however. The district court concluded that such a tender requirement is a "qualification[], limitation[], or restriction[]" under Delaware General Corporation Law § 151 that must be specified in the Amended Certificate, and that Oliveira complied with all of the express requirements in the Amended Certificate for cash conversion. The district court awarded damages for the difference between the amount Oliveira received

4

for selling his Pangaea shares on the open market following the merger and the conversion price.

On appeal, Quartet and Pangaea contend that "a proper interpretation of the contractual relationship between Quartet and its shareholders necessarily requires consideration of all relevant contractual documents" including press releases, a Proxy Statement, the corporation's SEC registration statement, and the final prospectus that allegedly informed plaintiff of the tender requirement and created a parallel contractual obligation. Appellants' Br. 18-22, 32. However, we agree with the district court that such an interpretation contravenes the text of § 151(a), which makes it clear that requirements affecting the rights of shareholders must be included in the corporation's certificate of incorporation.

The Amended Certificate does state that a shareholder will only be paid if "he demands conversion of his shares in accordance with paragraph C above in connection with any Proxy Solicitation." Joint App'x at 95. In the Amended Certificate, "Proxy Solicitation" refers not to a published document, but to the process by which "the Corporation shall submit such Business Combination to its holders of Common Stock for approval." *Id.* at 94. This reference is not sufficient to incorporate a later tender requirement—appearing only in material published at the time of the merger—into the Amended Certificate.

5

We have considered Quartet's and Pangaea's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court